UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| STEPHANIE ILENE LAZARUS,<br><br>        Petitioner,<br><br>    v.<br><br>LEROY D. BACA, SHERIFF OF LOS ANGELES COUNTY; SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES,<br><br>        Respondents. | No. CV 10-1423 GHK (FFM)<br><br>ORDER SUMMARILY DISMISSING ACTION |

On February 25, 2010, petitioner filed a document entitled "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254" (the "Petition" or "Pet."). Petitioner alleges that she is being held for trial in Los Angeles County on a charge of one count of murder in violation of California Penal Code section 187 ("Section 187"). Petitioner contends that she is being unlawfully confined pursuant to an order setting bail at $10 million. Petitioner contends that the bail order violates the Fourteenth Amendment's Due Process Clause and the Fifth, Eighth, and Fourteenth Amendments' prohibitions against excessive bail. Petitioner requests that the Court issue a writ of habeas corpus setting "reasonable bail" for petitioner pending trial; or, in the alternative, directing respondent Los

///

1  Angeles County Superior Court to show cause why the bail order should not be
2  vacated and reasonable bail not be ordered. (Pet. at 5.)
3     The Court finds that summary dismissal of the Petition pursuant to *Younger*
4  *v. Harris*, 401 U.S. 37, 45-46, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971) is warranted.

## I. ALLEGATIONS

Petitioner alleges, in pertinent part, that she is a Los Angeles Police Department ("LAPD") detective, and has been employed by the LAPD since 1983. Petitioner is the defendant in *People of the State of California v. Stephanie Ilene Lazarus*, Los Angeles County Superior Court Case No. BA357423. Petitioner alleges that on June 5, 2009, she was arrested and charged, prior to a preliminary hearing, with one count of murder in violation of Section 187. The murder in question is alleged to have occurred on February 24, 1986. (Pet. at 1.) The complaint also alleged a special circumstance of burglary or attempted burglary in violation of California Penal Code section 460, within the meaning of California Penal Code section 190.2(a)(17). (*Id.* at 1-2.) Because of the special circumstance allegation, petitioner was subject to capital prosecution and held without bail prior to preliminary hearing. (*Id.* at 2.)

The prosecution moved to amend the complaint to allege an additional special circumstance allegation of lying in wait in violation of California Penal Code section 190.2(a)(15). (*Id.* at 2.) At the December 10, 2009 conclusion of petitioner's preliminary hearing, the state court dismissed both special circumstance allegations due to insufficient evidence. This rendered petitioner eligible for bail. (*Id.*) On December 18, 2009, petitioner was arraigned on an information alleging one count of murder and a special allegation of use of a firearm within the meaning of California Penal Code section12022.5(a). (*Id.*)
///

On December 18, 2009, the trial court heard petitioner's motion to set bail

2

1 in the amount of $300,000 to $500,000.  (*Id.*)  In support of that motion, petitioner
2 adduced evidence that she had an exemplary work record with the LAPD; she had
3 resided in the Los Angeles area since 1965; she had been married since 1986 to an
4 LAPD officer and had a three-year-old daughter; she had resided in Simi Valley
5 since 1994; and she had a serious medical condition that required monitoring
6 every three months.  (*Id.* at 2-3; Ex. 2 to Pet. at 46-47, 48-49.)  She also proffered
7 21 letters of support from family members, friends, neighbors, and former
8 coworkers.  (Pet. at 3; Ex. 1 to Pet.; Ex. 2 to Pet. at 46.)

9       The prosecution sought bail in the amount of $5 million.  (Pet. at 3.)  The
10 prosecution argued, *inter alia*, that petitioner should be considered a flight risk.
11 (Pet. at 3; Ex. 2 to Pet. at 49-50.)

12       The trial court found that the presumptive bail, according to the Los
13 Angeles County Felony Bail Schedule (the "Schedule"), was $1.055 million.  (Pet.
14 at 3; Ex. 2 to Pet. at 45.)  The trial court asserted, however, that the evidence
15 against petitioner, including petitioner's DNA in an apparent bite mark on the
16 victim's arm, was "compelling and include[d] motive, means, opportunity and
17 identity."  (Ex. 2 to Pet. at 53.)  The trial court also asserted that the seriousness of
18 the charged offense was "extreme."  In that respect, the trial court noted that the
19 crime took place in the victim's home and that the victim was bludgeoned and
20 then shot three times at close range, including one contact shot to the chest, which
21 suggested an intent to execute.  (*Id.* at 53-54.)  The trial court noted that the
22 punishment for such a crime was 25 years to life in prison.  (*Id.* at 54.)
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28

3

1    The trial court further asserted that petitioner, as a police officer, likely
2 knew the strength of the prosecution's case and the likelihood that, if convicted,
3 she might spend the rest of her life in prison.[1]  (*Id.* at 53-54.)  The trial court
4 reasoned, "The seriousness of the charged offense and its punishment and the
5 strength of the prosecution's evidence . . . provides such a strong incentive to flee
6 that this court believes that if [petitioner] is released on bail, the probability of her
7 not appearing at trial is a near certainty."  (*Id.* at 54.)  The trial court accordingly
8 set bail in the amount of $10 million, to be posted only in cash.  (Pet. at 3; Ex. 2 to
9 Pet. at 55.)

10    Plaintiff is unable to post $10 million in bail and remains in the custody of
11 respondent Leroy D. Baca.  (Pet. at 4-5.)

## II.  STATE COURT REVIEW

On December 23, 2009, petitioner filed a petition for writ of mandate with the California Court of Appeal, Second Appellate District, Case No. B221175. (Pet. at 4; Ex. 3. to Pet.)  Petitioner alleged that:  (1) the trial court had no authority to order that bail be posted only in cash; and (2) the trial court abused its discretion in setting bail in an amount approximately 10 times the Schedule, and thereby violated petitioner's state and federal constitutional and statutory rights. (Pet. at 4; Ex. 3 to Pet.)  On January 21, 2010, the Court of Appeal issued an alternative writ directing the trial court either to vacate the cash bail requirement or show cause by March 19, 2010 why the cash bail requirement should not be vacated.  (Pet. at 4.)

---

[1] The trial court further found that petitioner likely had access to weapons if she were released and was a potential danger to herself and others; the court stated, however, that it did not base its bail order on this factor.  (*Id.* at 54.)

4

On January 25, 2010, an order of the trial court vacating the cash bail requirement was filed with the Court of Appeal. (*Id.*) On January 27, 2010, the Court of Appeal dismissed the determination of the cash bail requirement as moot and denied the petition in all other respects. (*Id.*; Ex. 4 to Pet.)

On February 4, 2010, petitioner filed a petition for writ of habeas corpus, Case No. S180015, and a petition for review, Case No. B221175, with the California Supreme Court. (Pet. at 4; Ex. 5 to Pet.) Petitioner again alleged that her state and federal constitutional and statutory rights were violated by the bail amount. (*See* Ex. 5 to Pet.) On February 18, 2010, the California Supreme Court, sitting en banc, denied the petition for writ of habeas corpus and the petition for review. (*Id.* at 123.)

This Petition followed.

### III. ANALYSIS

A.  Under *Younger*, the Court must abstain from deciding the Petition.

    1.  <u>The requirements for *Younger* abstention are met</u>.

28 U.S.C. § 2241(c)(3) ("Section 2241(c)(3)")[2] empowers a district court to issue a writ of habeas corpus before a judgment is entered in a criminal proceeding. As a general proposition, a federal court will not intervene in a pending state criminal proceeding absent extraordinary circumstances where the

---

[2] Petitioner brings the Petition under 28 U.S.C. § 2254 ("Section 2254"). (Pet. at 1.) Section 2254 applies to *postconviction* petitions for relief, in that it applies to persons "in custody pursuant to a state court judgment." 28 U.S.C. § 2254; *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2005). "By contrast, the general grant of habeas authority in § 2241 is available for challenges by a state prisoner who is not in custody pursuant to a state court judgment – for example, a defendant in pre-trial detention or awaiting extradition." *White*, 370 F.3d at 1006; *Stow v. Murashige*, 389 F.3d 880, 885-88 (9th Cir. 2004). The Court thus construes the Petition as seeking relief under Section 2241(c)(3).

danger of irreparable harm is both great and immediate. *See Younger*, 401 U.S. at 45-46; *see also Fort Belknap Indian Community v. Mazurek*, 43 F.3d 428, 431 (9th Cir. 1994). "[O]nly in the most unusual circumstances is a defendant entitled to have federal interposition by way of injunction or habeas corpus until after the jury comes in, judgment has been appealed from and the case concluded in the state courts. Apparent finality of one issue is not enough." *Drury v. Cox*, 457 F.2d 764, 764-65 (9th Cir. 1972); *see also Carden v. Montana*, 626 F.2d 82, 83-84 (9th Cir. 1980).

*Younger* abstention is appropriate in favor of a state proceeding if three criteria are met: (1) the state proceedings are ongoing; (2) the proceedings implicate important state interests; and (3) the state proceedings provide an adequate opportunity to litigate the plaintiff's federal constitutional claims. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982); *Kenneally v. Lungren*, 967 F.2d 329, 331-32 (9th Cir. 1992). Here, it appears to the Court that all three criteria for *Younger* abstention are present.

First, petitioner's criminal trial is ongoing. (*See* Pet. at 4-5.) Second, petitioner's claims involve the State of California's important interest in the order and integrity of its criminal proceedings. *See Kelly v. Robinson*, 479 U.S. 36, 49, 107 S. Ct. 353, 93 L. Ed. 2d 216 (1986) ("the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief") (citing *Younger*, 401 U.S. at 44-45); *Rose v. Mitchell*, 443 U.S. 545, 585, 99 S. Ct. 2993, 61 L. Ed. 2d 739 (1979) ("Nowhere has a 'proper respect for state functions' been more essential to our federal system than in the administration of criminal justice. [O]verextension of habeas corpus . . . runs afoul of the very principle of primary state jurisdiction over . . . criminal laws"). The State of California also has an important interest in, *inter alia*, securing the

1 | appearance of criminal defendants for trial. *See* Cal. Penal Code § 1275(a)
2 | (setting forth interests that judicial officers are to consider in setting bail). "Such
3 | an interest is more than enough to trigger the principles of comity and federalism."
4 | *Mounkes v. Conklin*, 922 F. Supp. 1501, 1512 (D. Kansas 1996). In addition,
5 | "[t]he State's interest is not any less simply because a defect in setting the bail
6 | bond is not a defense to the actual criminal prosecution." *Id.*; *Mudd v. Busse*, 437
7 | F. Supp. 505, 511 (D.C. Ind. 1977). It would violate the principles of comity and
8 | federalism for the Court to intervene in petitioner's criminal proceedings and
9 | make its own determination of the amount necessary to secure her appearance at
10 | trial.

Third, the state proceedings provide petitioner with an adequate opportunity to litigate her constitutional claims. "So long as a plaintiff is not barred on procedural or technical grounds from raising alleged constitutional infirmities, it cannot be said that state court review of constitutional claims is inadequate for *Younger* purposes." *Hansel v. Town Ct. for Town of Springfield, N.Y.*, 56 F.3d 391, 394 (2nd Cir. 1995); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987) (federal court should assume that state procedures will afford adequate opportunity for consideration of constitutional claims "in the absence of unambiguous authority to the contrary"). Here, petitioner presented her constitutional claims to the California Court of Appeal and California Supreme Court. The record reflects that both courts reviewed her petitions; notably, the California Supreme Court reviewed her petitions en banc. That the state courts rejected her constitutional claims upon review does not preclude *Younger* abstention. *See Carden*, 626 F.2d at 83-84 (abstaining on *Younger* grounds in case where petitioners claiming violation of right to speedy trial had previously presented claim to state supreme court, which rejected it).

///
///

appearance of criminal defendants for trial. *See* Cal. Penal Code § 1275(a) (setting forth interests that judicial officers are to consider in setting bail). "Such an interest is more than enough to trigger the principles of comity and federalism." *Mounkes v. Conklin*, 922 F. Supp. 1501, 1512 (D. Kansas 1996). In addition, "[t]he State's interest is not any less simply because a defect in setting the bail bond is not a defense to the actual criminal prosecution." *Id.*; *Mudd v. Busse*, 437 F. Supp. 505, 511 (D.C. Ind. 1977). It would violate the principles of comity and federalism for the Court to intervene in petitioner's criminal proceedings and make its own determination of the amount necessary to secure her appearance at trial.

Third, the state proceedings provide petitioner with an adequate opportunity to litigate her constitutional claims. "So long as a plaintiff is not barred on procedural or technical grounds from raising alleged constitutional infirmities, it cannot be said that state court review of constitutional claims is inadequate for *Younger* purposes." *Hansel v. Town Ct. for Town of Springfield, N.Y.*, 56 F.3d 391, 394 (2nd Cir. 1995); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987) (federal court should assume that state procedures will afford adequate opportunity for consideration of constitutional claims "in the absence of unambiguous authority to the contrary"). Here, petitioner presented her constitutional claims to the California Court of Appeal and California Supreme Court. The record reflects that both courts reviewed her petitions; notably, the California Supreme Court reviewed her petitions en banc. That the state courts rejected her constitutional claims upon review does not preclude *Younger* abstention. *See Carden*, 626 F.2d at 83-84 (abstaining on *Younger* grounds in case where petitioners claiming violation of right to speedy trial had previously presented claim to state supreme court, which rejected it).

///

///

appearance of criminal defendants for trial. *See* Cal. Penal Code § 1275(a) (setting forth interests that judicial officers are to consider in setting bail). "Such an interest is more than enough to trigger the principles of comity and federalism." *Mounkes v. Conklin*, 922 F. Supp. 1501, 1512 (D. Kansas 1996). In addition, "[t]he State's interest is not any less simply because a defect in setting the bail bond is not a defense to the actual criminal prosecution." *Id.*; *Mudd v. Busse*, 437 F. Supp. 505, 511 (D.C. Ind. 1977). It would violate the principles of comity and federalism for the Court to intervene in petitioner's criminal proceedings and make its own determination of the amount necessary to secure her appearance at trial.

Third, the state proceedings provide petitioner with an adequate opportunity to litigate her constitutional claims. "So long as a plaintiff is not barred on procedural or technical grounds from raising alleged constitutional infirmities, it cannot be said that state court review of constitutional claims is inadequate for *Younger* purposes." *Hansel v. Town Ct. for Town of Springfield, N.Y.*, 56 F.3d 391, 394 (2nd Cir. 1995); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987) (federal court should assume that state procedures will afford adequate opportunity for consideration of constitutional claims "in the absence of unambiguous authority to the contrary"). Here, petitioner presented her constitutional claims to the California Court of Appeal and California Supreme Court. The record reflects that both courts reviewed her petitions; notably, the California Supreme Court reviewed her petitions en banc. That the state courts rejected her constitutional claims upon review does not preclude *Younger* abstention. *See Carden*, 626 F.2d at 83-84 (abstaining on *Younger* grounds in case where petitioners claiming violation of right to speedy trial had previously presented claim to state supreme court, which rejected it).

///

///

    2.  <u>Petitioner has not shown that an exception to *Younger* exists</u>.

  An exception to *Younger* exists if petitioner makes a showing of bad faith, harassment, or some other extraordinary circumstance where irreparable injury can be shown. *Perez v. Ledesma*, 401 U.S. 82, 85, 91 S. Ct. 674, 27 L. Ed. 2d 701 (1971). Petitioner has not made such a showing. First, there is no evidence of bad faith or harassment. Bad faith has been defined in the *Younger* context as any "prosecution [that] has been brought without a reasonable expectation of obtaining a valid conviction." *Kugler v. Helfant*, 421 U.S. 117, 126 n.6, 95 S. Ct. 1524, 44 L. Ed. 2d 15 (1975). Nothing in the record suggests that the trial court acted in manner comparable to an official bringing a prosecution in bad faith. (*See*, *e.g.*, Ex. 2 to Pet.) Nor can the Court conclude that the trial court sought to harass petitioner. The trial court heard arguments from petitioner and from the prosecution, set forth the state and federal law governing his decision, and articulated his reasons for setting the bail terms. In addition, the trial court promptly complied with the Court of Appeal's order that it vacate the cash bail requirement. These circumstances do not suggest bad faith or harassment.

  Nor has petitioner shown an extraordinary circumstance, resulting in irreparable injury, that would justify intervention. "[E]ven irreparable injury is insufficient unless it is both great and immediate." *Younger*, 401 U.S. at 46 (internal quotation marks omitted). The Ninth Circuit has found irreparable injury where a state attempted to hold a second trial after a defendant had been tried on the same offense. *Mannes v. Gillespie*, 967 F.2d 1310, 1312 (9th Cir. 1992); *see also Stow*, 389 F.3d at 888-92 (granting Section 2241(c)(3) petition on double jeopardy claim). The Ninth Circuit has also granted a pretrial habeas petition where the defendant was denied his right to a speedy trial. *McNeely v. Blanas*, 336 F.3d 822, 832 (9th Cir. 2003) (holding that pretrial delay of over five years violated speedy trial rights); *but see Carden*, 626 F.2d at 84 ("[A] speedy trial claim is best reviewed after trial when the district court's dismissal is more

1 conclusive and allegations of prejudice are less speculative"; distinguishing
2 double jeopardy claims).

3      One could argue that, as with double jeopardy and speedy trial claims, "full
4 vindication" of the right to be free from excessive bail "necessarily requires
5 intervention before trial." *Mannes*, 967 F.2d at 1312 (discussing rationale behind
6 *Younger* exception for double jeopardy claims). In such circumstances, *Younger*
7 abstention might not be appropriate. However, the Court finds that there are
8 sound reasons for distinguishing double jeopardy and speedy trial claims from
9 excessive bail claims. A pretrial detention that is based upon a judicial
10 determination of probable cause is not, without more, a form of punishment. *See*
11 *Bell v. Wolfish*, 441 U.S. 520, 534-39, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979);
12 *United States v. Salerno*, 481 U.S. 739, 746, 107 S. Ct. 2095, 95 L. Ed. 2d 697
13 (1987) (citing *Bell*, *supra*, at 537); *cf. Salerno*, 481 U.S. at 747 n.4 (expressing no
14 view "as to the point at which detention in a particular case might become
15 *excessively prolonged, and therefore punitive*, in relation to Congress's regulatory
16 goal" (emphasis added)). Furthermore, where pretrial detention is based on a
17 probable cause determination, the government "has a substantial interest in
18 ensuring that persons accused of crimes are available for trial and, ultimately, for
19 service of their sentences . . ."; and "confinement of such persons pending trial is a
20 legitimate means of furthering that interest." *Bell*, 441 U.S. at 534.

21      In addition, although the Supreme Court has held that the government may
22 not set bail to achieve invalid interests (*see Stack v. Boyle*, 342 U.S. 1, 72 S. Ct. 1,
23 96 L. Ed. 3 (1951)), it has also held that the Excessive Bail Clause does not
24 provide an absolute right to bail (*Salerno*, 481 U.S. at 752; *Carlson v. Langdon*,
25 ///
26 ///
27 ///
28

1  342 U.S. 524, 545-46, 72 S. Ct. 525, 96 L. Ed. 547 (1952)).[3]  Thus, the injury
2  contemplated by the Excessive Bail Clause is not pretrial detention *per se* – as
3  such detention, in itself, may further legitimate state interests, or may be avoided
4  by payment of the bail – but an "excessive sanction[]." *Roper v. Simmons*, 543
5  U.S. 551, 560, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005) (noting common thread
6  among Eighth Amendment prohibitions against excessive bail, excessive fines,
7  and cruel and unusual punishment).

8  By contrast, the Double Jeopardy Clause "serves the function of preventing
9  both successive punishments and . . . successive prosecutions." *United States v.
10 Ursery*, 518 U.S. 267, 273, 116 S. Ct. 2135, 135 L. Ed 2d 549 (1996).  In turn, the
11 right to a speedy trial safeguards against, *inter alia*, the risk that the defense will
12 be impaired by the passage of time, *e.g.* by the death or disappearance of
13 witnesses or by fading memories. *Barker v. Wingo*, 407 U.S. 514, 532, 92 S. Ct.
14 2182, 33 L. Ed. 2d 101 (1972).  Thus, the injury a double jeopardy or speedy trial
15 claimant faces – *i.e.*, unconstitutional punishment or prosecution, or an impaired
16 defense – is arguably greater than the injury faced by a pretrial detainee held on an
17 excessive bail order, where the detention itself was based on a probable cause
18 determination.  Such a pretrial detention does not, without more (such as a speedy
19 trial violation or an express intent to punish), amount to punishment of a
20 constitutional magnitude.[4]  *See Salerno*, 481 U.S. at 746, 747 n.4; *Bell*, 441 U.S. at

---

[3] The Supreme Court has further recognized that pretrial detention intended to further legitimate and compelling governmental interests, such as protecting witnesses, protecting the community, or preventing flight, does not offend the Due Process Clause's substantive due process guarantee. *Salerno*, 481 U.S. at 748-49.

[4] It could be argued that if pretrial detention is secured by a bail order that furthers an invalid state interest, or is excessive in relation to the valid interest the state seeks to protect, it is tantamount to punishment. However, such a contention could not easily be reconciled with the Supreme Court's determination that pretrial
(continued...)

534-39 (discussing whether "particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of the word"). Moreover, at the very least, such pretrial detention furthers the valid state interest of assuring the defendant's presence at trial.

The Court thus finds that abstention is warranted under *Younger*. *See*, *e.g.*, *Robinson v. Sniff*, ___ F. Supp. 2d ___, 2009 WL 1037716 at *1 (C.D. Cal. 2009) (dismissing on *Younger* grounds pretrial detainee's petition for writ of habeas corpus alleging, *inter alia*, setting of excessive bail); *Peterson v. Contra Costa County Sup. Ct.*, 2004 WL 443457 at *1-2 (N.D. Cal. 2004) (dismissing on *Younger* grounds pretrial detainee's claim under 42 U.S.C. § 1983 ("Section 1983") of violation of right to reasonable bail); *Leach v. Santa Clara County Bd. of Sup'rs*, 1995 WL 7935 at *4 (N.D. Cal. 1995) (dismissing on *Younger* grounds criminal appellant's Section 1983 claim that California bail system violated Due Process Clause); *see also Mounkes*, 922 F. Supp. at 1510-13 (dismissing on *Younger* grounds criminal defendants' Section 1983 claim that cash-only bond provision in bail bond system violated, *inter alia*, Excessive Bail Clause); *Mudd*, 437 F. Supp. at 509-18 (dismissing on *Younger* grounds pretrial detainees' Section 1983 claim that state's money bail system as implemented by defendant violated, *inter alia*, Excessive Bail Clause).

B.   <u>Even if *Younger* did not apply, petitioner could not obtain habeas relief.</u>

The Court further notes that, even if *Younger* abstention were not warranted, it is far from certain that petitioner would be entitled to federal habeas relief. A pretrial writ of habeas corpus shall not extend to a prisoner unless she "is

---

[4](...continued)
detention is not inherently punitive and that there is no absolute right to bail. After all, a defendant who cannot pay a reasonable bail suffers a deprivation of liberty in excess of that required to secure his presence at trial; and yet the Supreme Court would not, without more, deem that detention punishment. *See Bell*, 441 U.S. 534-39.

in custody in violation of the Constitution or laws or treaties of the United States . . . ." 28 U.S.C. § 2241(c)(3).  As to plaintiff's excessive bail claim, the Supreme Court has never squarely addressed whether the Excessive Bail Clause applies to the states through the Fourteenth Amendment.  *Martin v. Diguglielmo*, 644 F. Supp. 2d 618-19 (W.D. Pa. 2008); *Galen v. County of Los Angeles*, 477 F.3d 652, 659 (9th Cir. 2007).  At most, the Supreme Court has stated, "[T]he Eighth Amendment's proscription of excessive bail has been *assumed* to have application to the States through the Fourteenth Amendment." *Schilb v. Kuebel*, 404 U.S. 357, 365, 92 S. Ct. 479, 30 L. Ed. 2d 502 (1971) (emphasis added); *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979) ("agree[ing]" with same); *Galen*, 477 F.3d at 659 (assuming same).  Thus, it is unclear whether an excessive bail claim may serve as a basis for federal habeas relief.  *See Martin*, 644 F. Supp. 2d at 618-19; *but see Stow*, 389 F.3d at 888 (concluding, in context of double jeopardy claim, that Section 2241(c)(3) petitioner need not satisfy Section 2254's "demanding requirement" of showing that state court ruling was "contrary to" or "unreasonable application of" clearly established federal law; conducting *de novo* review).

  Furthermore, even if petitioner's claim were cognizable on habeas review, it would not necessarily entitle her to relief.  Petitioner essentially concedes that it is permissible to set bail in order to assure the presence of the defendant at trial. (*See* Pet. Mem. at 9-10; *see also Stack*, 342 U.S. at 5.)  Petitioner contends, however, that the trial court judged her flight risk solely on the seriousness of the charged offenses.  (Pet. Mem. at 9-10.)  Petitioner argues that seriousness of an offense is a weak predictor of the likelihood of flight.  (*Id.*)  The Court finds this argument unconvincing.

  First, the record indicates that the trial court did not judge petitioner's flight risk solely on the seriousness of the charged offenses, but also on petitioner's likely understanding, as a police officer, of the strength of the prosecution's case

1  and the likelihood that if convicted, she would spend the rest of her life in prison.
2  (*See* Ex. 2 to Pet. at 53-54.)  Second, in any case, California law requires a trial
3  court to consider to seriousness of the offense in determining the bail amount.
4  Cal. Penal Code § 1275(a).  As the Ninth Circuit held in *Galen*, "*Salerno* holds
5  that th[e] non-flight-related considerations [enumerated in the California Penal
6  Code] are permissible . . . ."  *Galen*, 447 F.3d at 662.  Thus, even if the
7  seriousness of the offense with which petitioner is charged had absolutely *no*
8  correlation to the likelihood of her not appearing for trial, it would still be a
9  permissible state concern to be addressed in setting bail.
10      Petitioner further argues that the trial court violated her right to be free from
11 excessive bail by failing to consider her ability to post the ordered bail.  (Pet.
12 Mem. at 12-13.)  But "[t]he mere fact that petitioner may not . . . be[] able to pay
13 the bail does not make it excessive."  *White v. Wilson*, 399 F.2d 596, 598 (9th Cir.
14 1968).  Petitioner also argues that the trial court should have considered less
15 restrictive means of compelling petitioner's presence at trial, such as requiring her
16 to surrender her passport or submit to electronic monitoring.  (Pet. Mem. at 10-
17 11.)  However, the Constitution does not require that a trial court consider the
18 least restrictive means to secure a defendant's trial appearance in setting bail.
19 *United States v. Gardner*, 523 F. Supp. 2d 1025, 1031 (N.D. Cal. 2007); *United*
20 *States v. Arzberger*, 592 F. Supp. 2d 590, 605 (S.D.N.Y. 2008) ("[A]n absolute
21 'least restrictive conditions' requirement would be an anomalous constitutional
22 doctrine.  It would mean that the imposition of any unnecessary condition of bail,
23 no matter how minor, would give rise to a constitutional claim").
24     Petitioner further argues that the bail is excessive because it is nearly 10
25 times the amount set forth in the Schedule.  (*See* Pet. Mem. at 8.)  But
26 "[e]xcessiveness cannot be determined by a general mathematical formula . . . ."
27 *Galen*, 477 F.3d at 662.  Rather, it "turns on the correlation between the state
28 interests a judicial officer seeks to protect and the nature and magnitude of the bail

1 conditions imposed in a particular case." *Id.* (rejecting plaintiff's contention that
2 bail was excessive because it was 2000 percent higher than default amount for
3 violation and higher than default amount for other, more serious crimes).

4     Here, the record indicates that the trial court sought to protect the legitimate
5 interests of preventing petitioner's flight and in addressing the seriousness of the
6 charges against petitioner. (*See* Ex. 2 to Pet. at 53-54; *see also Galen*, 477 F.3d at
7 662.) The record further indicates that the alleged crime – a murder in the
8 victim's home *via* bludgeoning and close-range shots – was extremely serious;
9 that the evidence included DNA in a bite mark on the victim's arm and "motive,
10 means, and opportunity"; that the punishment upon conviction was 25 years to
11 life; and that petitioner, as a seasoned LAPD officer, was likely aware of the
12 chance that she could be sentenced to life in prison. (*See id.* at 53-54.) In light of
13 this evidence, the Court cannot conclude that a $10 million bail amount exceeds
14 the amount necessary to prevent petitioner's flight and to reflect the seriousness of
15 the charged offense.

16     Finally, as to petitioner's claim that the trial court's bail order violated her
17 procedural due process rights (Pet. Mem., *passim*), the Court cannot conclude, in
18 light of the foregoing, that any liberty interest petitioner had in a reasonable bail
19 under state statute was denied arbitrarily. *Cf. Oviatt v. Pearce*, 954 F.2d 1470,
20 1474-77 (9th Cir. 1992) (in Section 1983 case, finding that state-created liberty
21 interest in being free from incarceration without prompt pretrial appearance was
22 arbitrarily violated by county jail's haphazard approach to recordkeeping).

23     In sum, even if the Court were to conclude that an exception to *Younger*
24 existed and federal intervention were warranted, the Court would deny the
25 Petition.
26 / / /
27 / / /
28 / / /

## IV. CONCLUSION

Under *Younger*, the Court must abstain from deciding the Petition. IT THEREFORE IS ORDERED that this action be summarily dismissed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:     3/17/10

_____
GEORGE H. KING
United States District Judge

Presented by:

   / s / FREDERICK F. MUMM
FREDERICK F. MUMM
United States Magistrate Judge